**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JUSTIN CARNEGIE,** | **Civil Action No. 20-4315 (MCA)** |
| **Petitioner,** | |
| v. | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

This matter has been opened to the Court by Justin Carnegie's ("Carnegie" or "Petitioner") motion to vacate pursuant 28 U.S.C. § 2255 ("Motion"). For the reasons explained in this Opinion, the Court denies the Motion, the request for an evidentiary hearing, and a certificate of appealability.

## I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

On May 4, 2015, a criminal complaint was filed against Carnegie and others, charging them with a conspiracy to distribute heroin, in violation of 18 U.S.C. § 846. (*See* Mag. 15-6593; Crim. No. 14-220.) On August 7, 2015, Carnegie was arrested, and the Court appointed attorney Rubin Sinins to represent him (Crim. No. 14-220; ECF 22.) In early November 2015, Sinins recognized a potential conflict (Crim. No. 14-220; ECF 84), and, on December 30, 2015, attorney Thomas F. Verrastro was appointed to represent Carnegie. (Crim. No. 14- 220; ECF 118.) Approximately one year later, on October 3, 2016, attorney Salvatore T. Alfano was appointed to represent Carnegie, and Verrastro's representation was terminated. (Crim. No. 14-220; ECF 206.) On November 22, 2016, John J. Roberts ("Roberts") of Arseneault & Fassett, LLP was appointed to represent Carnegie. (Crim. No. 14-220; ECF 217.)

1

Meanwhile, on November 2, 2016, a federal grand jury in Newark returned a Sixth Superseding Indictment, Criminal Number 14-220 ("Superseding Indictment"), against Carnegie and his co-conspirators. The Superseding Indictment (Crim. 14-220; ECF 207) charged Carnegie with:

- **Count One: Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d);**
- **Count Thirteen: Violent Crime in Aid of Racketeering - Conspiracy to Assault with Dangerous Weapon, in violation of 18 U.S.C. § 1959(a)(6);**
- **Count Fourteen: Conspiracy to Possess a Firearm, in violation of 18 U.S.C. § 924(o);**
- **Count Eighteen: Conspiracy to Distribute Crack-Cocaine, in violation of 21 U.S.C. § 846; and**
- **Count Twenty: Conspiracy to Distribute Heroin, in violation of 21 U.S.C. § 846.**

The crime charged in Count One exposed Carnegie to a potential life sentence, and the two drug counts (Count Eighteen and County Twenty) exposed Carnegie to statutory mandatory minimums of ten years that—at the Government's sole discretion—could be increased to twenty years or life. (*See* PSR at ¶ 178.)

On March 10, 2017, the Government filed an Enhanced Penalty Information, pursuant to 21 U.S.C. § 851(a), charging that on or about September 19, 2011, Carnegie had been convicted in the New Jersey Superior Court of distribution of a controlled dangerous substance, based upon a guilty plea, which is a crime punishable by imprisonment exceeding one year under the laws of New Jersey. (Crim. No. 14-220; ECF 281-2.) This Enhanced Penalty Information increased the ten-year mandatory minimum term of imprisonment Carnegie faced on each of the two drug counts to a mandatory minimum term of twenty years. (*See id.*; *see also* PSR at ¶ 178.)

On June 21, 2017, Carnegie entered into a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to all five counts of the Superseding Indictment. (Crim. No. 14-

2

220; ECF 321.) The Plea Agreement contained factual stipulations, including that Carnegie (1) was a member of the Grape Street Crips; (2) actively participated in a drug conspiracy with fellow gang members to traffic more than 280 grams of crack-cocaine and more than one kilogram of heroin; and (3) participated with fellow gang members in a retaliatory shooting against rival gang members on October 7, 2013. (*Id.*) As part of the plea agreement, the government also agreed not to bring any further charges against Carnegie for his role in a kidnapping plot and two separate murder plots. (Exhibit A, Plea Tr. Dated Jun. 27, 2017 to Answer at 8-9.) In the plea agreement, the government and Carnegie agreed that the appropriate sentence was 25 years' imprisonment (Crim. No. 14-220; ECF 321). The stipulated sentence was well below the maximum potential sentence of life in prison that Carnegie faced if he were convicted of all charges at trial.

On June 27, 2017, Carnegie entered his plea before this Court (Crim. No. 14-220; ECF 319; *see also* Exhibit A.) At his plea hearing, Carnegie represented to the Court that he was fully satisfied with the representation and advice given to him by Roberts, that he was pleading guilty of his own free will, and that he understood the elements of the crimes to which he was pleading guilty, including that he knowingly had participated in each of the charged conspiracies; Carnegie also provided factual admissions concerning his role in each of the crimes. (*See* Exhibit A at 5, 11-12, 17-23.)

On July 8, 2018, in advance of his sentencing, Carnegie terminated attorney Roberts' representation and retained new counsel—Isaac Wright, Jr. ("Wright"). (Crim. No. 14-220; ECF 738.) On August 30, 2018, Carnegie moved to withdraw his guilty plea. (Crim. No. 14-220; ECF 817.) On October 4, 2018, this Court denied Carnegie's Motion. (Crim. No. 14-220; ECF 835.) As set forth in this Court's Order, Carnegie had represented at his plea hearing that he had been "fully satisfied with the representation and advice given to him by his attorney in the case," and that

3

during his plea hearing, the Court had "engaged in a detailed colloquy with Defendant to ensure Defendant understood the charges against him, including the elements of the conspiracy charges[.]" (*Id.* at 2.) This Court also found that Carnegie had failed to "credibly assert his factual innocence based on facts in the record." (*Id.* at 4.)

On December 4, 2018, this Court sentenced Carnegie, consistent with the parties' plea agreement, to a term of imprisonment of 300 months on Counts One, Eighteen, and Twenty, a term of 36 months' imprisonment on Count Thirteen, and a term of 240 months' imprisonment on Count Fourteen, all to be served concurrently. (Crim. No. 14-220; ECF 855.) On December 13, 2018, Carnegie filed a notice of appeal (Crim. No. 14-220; ECF 868). On or about February 19, 2020, Carnegie moved to dismiss his appeal, pursuant to Federal Rule of Appellate Procedure 42(b), following consultation with counsel. (App. No. 18-3743 (3d Cir.); ECF 43-1 at ¶ 9.) Later that same day, the Third Circuit clerk dismissed the appeal. (App. No. 18-3743 (3d Cir.); ECF 44.)

On or about March 26, 2020, Carnegie filed the instant motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255 ("motion") (Civ. 20-4315; ECF 1). Carnegie's § 2255 motion asserts ineffective assistance of counsel. In his motion, Carnegie alleges that both Roberts and Wright failed to contest the Enhanced Penalty Information filed against Carnegie pursuant to 21 U.S.C. § 851(a), and that Roberts failed to investigate the discovery material that was produced by the Government and review it with Carnegie, and also coerced Carnegie into pleading guilty. Carnegie also alleges generally that his "counsel" failed to argue there was insufficient evidence to support Carnegie's convictions on Counts 18 and 20 of the Superseding Indictment.

On December 28, 2020, the government filed its answer. (20-cv-4315, ECF No. 10.) On January 27, 2021, Carnegie filed a reply in further support of his § 2255 motion. (20-cv-4315, ECF No. 11.)

On July 22, 2022, Carnegie filed on the criminal docket an additional letter in support of his § 2255 motion, in which he claimed that an "intervening change in law" rendered him "actually innocent" of one of the charges to which he pled guilty. (Crim No. 14-220, ECF No. 1046.). Carnegie contends that the Supreme Court's decision in United *States v. Taylor*, 142 S. Ct. 2015 (2022), renders him "actually innocent of Count #14 of [the] indictment" for Conspiracy to Use, Carry, or Possess a Firearm in Furtherance of a Crime of Violence, because "possession of a firearm as typically charged under 18 U.S.C. § 924(c) with its predicate conduct or offense being a conspiracy or attempt crime is not a crime of violence." (*Id.*, ECF No. 1046, at 1.)   The government filed a response on February 2, 2023. (Civ. No. 20-4315, ECF No. 13.)

## II.   **STANDARD OF REVIEW**

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).   In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

5

The Court may dismiss the motion without holding an evidentiary hearing where the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46). Moreover, the Third Circuit has "repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition." *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (citations omitted).

## III.   ANALYSIS

### a.  Ineffective Assistance of Counsel Claims

Carnegie asserts that his counsel provided ineffective assistance in violation of his Sixth Amendment rights. Before a petitioner can establish that he was denied his Sixth Amendment right to the effective assistance of counsel, he must make a two-part showing: (1) that his counsel's performance was so deficient that the attorney was not functioning as the professional counsel guaranteed by the Sixth Amendment; and (2) that he was prejudiced by his attorney's deficiencies, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Under *Strickland*, counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Thus, to prove deficiency, the petitioner must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999). Courts evaluate the reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances."

6

*Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Ultimately, it is the petitioner who bears the burden of demonstrating that counsel's representation was deficient. *Id.*

Even where a petitioner is able to show that counsel's representation was deficient, he must still demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Strickland*, 466 U.S. at 692–93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

"Defendants are entitled to the effective assistance of competent counsel" during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quotation omitted). "When addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotation marks omitted). Where a petitioner accepted a guilty plea based on deficient representation, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Kmet*, 806 F. App'x. 109, 112 (3d Cir. 2020) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The right to effective assistance of counsel also extends to sentencing. *See United States v. Sepling*, 944 F.3d 138, 145 (3d Cir. 2019) (citing *Glover v. United States*, 531 U.S. 198 (2001)). A petitioner asserting ineffective assistance of counsel at sentencing must show that but for defense counsel's "alleged ineffectiveness, he would have likely received a lower sentence." *United States v. Booth*, 432 F.3d 542, 546-47 (3d Cir. 2005).

### 1. Failure to Object to the § 851 Enhancement.

Carnegie claims that Roberts and Wright rendered ineffective assistance by failing to object to the Enhanced Penalty Information on the grounds that Carnegie's September 2011 state

court conviction was broader than the generic definition of a "felony drug offense." (Civ. No. 20-4315; ECF 1 at 5.) He claims that he was prejudiced by the actions of counsel and subjected to a sentencing enhancement for which he did not qualify. *Id.*

The government argues that Carnegie's September 2011 state court conviction qualifies as a "felony drug offense" under 21 U.S.C. § 841, and, thus, there was no basis for Carnegie's counsel to object to the Enhanced Penalty Information. The government further argues that Carnegie's reliance on the Third Circuit's decision in *United States v. Aviles*, 938 F.3d 503, 514 (3d Cir. 2019) (concluding that Aviles's conviction under N.J. Stat. Ann. § 2C:35-4 is not a predicate felony drug offense) is misplaced. Finally, the government argues that Carnegie cannot show he was prejudiced by the actions of counsel, as the Enhanced Penalty Information had no effect on his stipulated sentence. This Court agrees with the government's arguments.

It is undisputed that on March 10, 2017, the government filed an Enhanced Penalty Information, pursuant to 21 U.S.C. § 851(a),[1] charging that on or about September 19, 2011, Carnegie had been convicted in the New Jersey Superior Court of distribution of a controlled dangerous substance, based upon a guilty plea, which is a crime punishable by imprisonment exceeding one year under the laws of New Jersey.

At the time the Enhanced Penalty Information was filed, and also at the time Carnegie was sentenced, 21 U.S.C. § 841 provided that any person who committed a violation of § 841(a) "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life

---

[1] Title 21, United States Code, Section 851 provides that no person "shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon." *See* 21 U.S.C. § 851(a).

8

imprisonment[.]"[2] Under the statute, the term "felony drug offense" meant "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Carnegie's "prior conviction for a felony drug offense" was a September 19, 2011 conviction for violating N.J.S.A 2C:35-5a(1) in the third degree. That statute provides that "it shall be unlawful for any person knowingly or purposely: (1) to manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog[.]" The details of Carnegie's September 19, 2011 conviction are set forth in the PSR and the transcript of the plea proceedings from Essex County Superior Court (attached to the government's Answer as Exhibit B).[3] According to the PSR and the transcript, in September 2011 Carnegie pled guilty to two counts of possession with intent to distribute CDS, and on November 10, 2011 was sentenced to 536 days' imprisonment on both counts. (PSR ¶ 138; Ex. B at 7-9, 16.) According to the transcript of the September 19, 2011 plea proceeding in Essex County Superior Court, Carnegie pled guilty to possession with intent to distribute cocaine, and possession with intent to distribute heroin. (Ex. B at 7.) He admitted in court that on May 11, 2010, in Orange, New Jersey, he was

---

[2] The First Step Act, which was enacted on December 21, 2018, modified the language of 21 U.S.C. § 841(a). The statute now provides that any person who commits a violation of § 841(a) "after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment." This modification to 21 U.S.C. § 841 did not apply retroactively to cases that were already final, and, as such, had no impact on Carnegie's case.

[3] Carnegie does not challenge the accuracy of the facts set forth in the PSR with respect to September 19, 2011 convictions. "It is well-established in this circuit . . . that a sentencing court may rely on the facts set forth in the presentence report when their accuracy is not challenged by the defendant." *United States v. Watkins*, 54 F.3d 163, 166-67 (3d Cir. 1995).

in possession of both heroin and cocaine packaged for distribution that he intended to sell, and that he was guilty of possession with intent to distribute both cocaine and heroin. (*Id.* at 7-8.)

The parties appear to agree that New Jersey statute 2C:35-5—the basis for Carnegie's prior "felony drug offense" conviction—is divisible by drug type. *See Lepianka v. Attorney General*, 586 F. App'x 869, 870-71 (3d Cir. 2014) (not precedential) (recognizing that N.J.S.A. 2C:35-5 is divisible and therefore "the Court may turn to the modified categorical approach"); *see also Marsh v. Attorney General United States*, 2023 WL 1990299, at *3 (3d Cir. 2023) (nonprecedential) ("drug type is an element of the § 2C:35-5 offense for purposes of determining divisibility under the categorical approach"); Civ. No. 20-4315, Petition at 5 (recognizing that "New Jersey's drug statute 2C:35-5 is a divisible offense").

New Jersey law prohibits, among other things, the distribution or possession with intent to distribute "a controlled dangerous substance." N.J.S.A. 2C:35- 5a(1). The statute then provides 14 numbered subsections providing for different punishment based on drug type and quantity. N.J.S.A. 2C:35-5b(1)-(14). New Jersey courts applying this statute have held that "use of the singular 'substance,' in N.J.S.A. 2C:35-5(a)(1)-(2) plainly refers to only one drug" and therefore "possession of . . . two substances is to be charged separately." *State v. Rivastineo*, 149 A.3d 321, 323-24 (N.J. Super. Ct. App. Div. 2016). Thus, "each drug possessed with intent to distribute is a separate crime" because "[t]he authorized punishment for a manufacturing or distribution offense differs depending, in part, on the drug involved." *State v. Jordan*, 563 A.2d 463, 464- 65 (N.J. Super. Ct. App. Div. 1989);*see State v. Bacote*, 554 A.2d 1378, 1379- 80 (N.J. Super. Ct. Law Div. 1988). That is sufficient to show divisibility. *See Henderson*, 841 F.3d at 629; *United States v. Abbott*, 748 F.3d 154, 159 n.4 (3d Cir. 2014).

When the underlying conviction is divisible, the Court may apply the modified categorical approach and look at certain documents to determine the crime of conviction. *See Lepianka*, 586 F. App'x at 871 (court reviewed judgment and indictment to determine which subpart of N.J.S.A. 2C:35-5 petitioner was convicted of, and determined subpart qualified as felony under federal law). On May 11, 2010, Carnegie was in possession of, and intended to distribute, both cocaine and heroin. PSR ¶ 138; Ex. B at 5. He was charged with one count of possession with intent to distribute cocaine, and one count of possession with intent to distribute heroin, and ultimately pled guilty to both counts. PSR ¶ 138; Ex. B at 9. The underlying documents reveal that Carnegie was convicted in September 2011 of possessing with intent to distribute both cocaine and heroin. PSR ¶ 138; Ex. B. Those convictions categorically qualify as felony drug offenses under federal law because cocaine and heroin are "narcotic drug[s]," under 21 U.S.C. § 802(17), and the offenses were punishable by "more than one year." *See* 21 U.S.C. §§ 802(44), 841. Given that Carnegie's September 2011 conviction qualifies as a "felony drug offense" under 21 U.S.C. § 841, Carnegie has not—and cannot—show that Roberts and Wright were ineffective for failing to object to the Enhanced Penalty Information.

Moreover, Carnegie's reliance on *United States v. Aviles*, 938 F.3d 503 (3d Cir. 2019), to argue that "New Jersey's drug statute does not qualify as a felony drug offense" is misplaced. Civ. No. 20-4315; ECF 1 at 5. In *Aviles*, the Third Circuit analyzed N.J. Stat. Ann. 2C:35-4, which prohibits maintaining or operating a controlled dangerous substance production facility and determined that a conviction under that statute did not qualify as a "felony drug offense." 938 F.3d at 515. Carnegie's prior conviction was for a violation N.J.S.A. 2C:35-5—not 2C:35-4. As such, *Aviles* has no impact on the analysis set forth above, which makes clear that 2C:35-5 is divisible, that the Court may look at underlying documents, and that those underlying documents

11

conclusively show that Carnegie's September 2011 conviction qualifies as a predicate "felony drug offense."

Given that Carnegie's 2011 conviction qualifies as a "felony drug offense" under 21 U.S.C. § 841, Carnegie has not met his burden of showing that Roberts and/or Wright were deficient for failing to argue against the applicability of the Enhanced Penalty Information. *See Werts v. Vaugh*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

Finally, Carnegie also fails to show he was prejudiced by counsel's failure to object to the Enhanced Penalty Information. In the guilty plea context, Carnegie must show that "but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence." *Booth*, 432 F.3d at 546-47; *see also United States v. Johnson*, 603 F. App'x 114, 118-19 (3d Cir. 2015) (not precedential) (declining to vacate petitioner's guilty plea on ineffective assistance of counsel grounds where trial exposed him to a much higher maximum sentence);*United States v. Peppers*, 273 F. App'x 155, 158 (3d Cir. 2008) (not precedential) (declining to conclude that counsel's negotiation of a favorable plea deal was objectively unreasonable where the risk of another jury conviction was imposition of a life sentence). Here, Carnegie was not "subjected to a sentencing enhancement that he did not qualify for." Civ. No. 20-4315; ECF 1 at 5. Rather, Carnegie entered into a plea agreement with a stipulated sentence of 25 years' imprisonment, which was well below the maximum potential sentence that Carnegie was facing for his crimes. *See* Ex. C ¶ 6. Carnegie does not plausibly assert that he would have proceeded to trial if his counsel had objected to the Enhanced Penalty Information or that a trial would have yielded a different outcome. *See Hill*, 474 U.S. at 58-59; *Peppers*, 273 F. App'x at 159. Nor does Carnegie show that but for defense

counsel's "alleged ineffectiveness, he would have likely received a lower sentence." *Booth*, 432 F.3d at 546-47. Accordingly, Carnegie has failed to demonstrate prejudice.

### 2. Failure to Challenge Insufficiency of the Evidence as to Drug Quantity

Carnegie also claims that "[c]ounsel's performance fell below an objective standard of reasonableness and unfairly prejudiced [him] in that the evidence was insufficient to support" his drug distribution convictions (Counts 18 and 20). (Civ. No. 20-4315; ECF 1 at 7.) Carnegie was charged and pled guilty to conspiracy to distribute crack cocaine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(A), in violation of 21 U.S.C. § 846 (Count 18), and conspiracy to distribute more than one kilogram of heroin, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(A), in violation of 21 U.S.C. § 846 (emphasis added). Specifically, in Carnegie's plea agreement he stipulated to the fact that from in or about May 2013 through in or about November 2016, Carnegie conspired with others to distribute more than one kilogram of heroin and more than 280 grams of crack cocaine. (Crim. No. 14-220; ECF 321.) At his plea hearing, Carnegie was asked whether he understood the elements of Counts 18 and 20, and he responded, "yes." (Exhibit A at 18:21-19-8.) He also admitted that he and other Grape Street Crips controlled drug tracking activities in certain areas of Newark and distributed over one kilogram of heroin and more than 280 grams of crack cocaine as part of that drug trafficking conspiracy. (Exhibit A at 20- 23.) Carnegie's admissions are sufficient to support his guilty plea. *See United States v. Broce*, 488 U.S. 563, 569-74 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt[.]").

Carnegie now claims that the government was required to present evidence that Carnegie distributed the charged amounts <u>in single distributions</u>, and that his counsel was ineffective for not making this argument. (Civ. No. 20-4315; ECF1 at 8.) A defendant may be liable, however, for all

the drugs trafficked during the conspiracy in which he was involved. *See United States v. Williams*, 974 F.3d 320, 362 (3d Cir. 2020). "[T]he proper inquiry is to determine the *violations of* § 841(a) within the scope of the conspiracy, or in furtherance of it, that were reasonably foreseeable to the defendant as a natural result of his unlawful agreement. All drug quantities involved therein are attributable to the defendant." *Id.* at 366-67 (emphasis in original). As such, the Government was not required to show that Carnegie distributed the drug amounts charged in Counts 18 and 20 as single distributions in order to convict Carnegie on those counts. Carnegie also stipulated to the fact that he "conspired with others to distribute more than one kilogram of heroin and more than 280 grams of crack-cocaine" (Crim. No. 20-1440; ECF 321). *See* United *States v. Cianci*, 154 F.3d 106, 110 (3d Cir. 1998) (recognizing that defendants are held to the stipulations in their plea agreements).

Moreover, Carnegie's reliance on *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019), is misplaced. There, the Third Circuit held that with respect to distribution or possession with intent to distribute, the quantity to be used for sentencing is from a single distribution. *Rowe*, 919 F.3d at 760. *Rowe* is irrelevant to Carnegie's convictions for conspiracy to distribute because the quantity used for a conspiracy charge is not limited to a single transaction, but rather the amount distributed during the duration of the conspiracy that was reasonably foreseeable to the defendant and may thus be attributed to him.

Finally, any challenge to the stipulated drug quantity would have breached the Plea Agreement. If counsel challenged the drug quantity at sentencing, the Government would have been entitled to rescind the Plea Agreement. *See United States v. Williams*, 510 F.3d 416, 427 (3d Cir. 2007) (acknowledging Government's "right to rescind the plea agreement" or "treat it as unenforceable" once a defendant breaches); *United States v. Swint*, 223 F.3d 249, 254 (3d Cir.

14

2000) (holding that a defendant's breach of his plea agreement in advance of sentencing excused the Government from its obligation to move for a downward departure).

For these reasons, Carnegie fails to show that Roberts and Wright were ineffective for failing to argue the Government had insufficient evidence to support Carnegie's convictions on Counts 18 and 20, as this argument has no legal merit. *See Werts*, 228 F.3d at 203 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim."). Carnegie also fails to show how he was prejudiced by Roberts and Wright's failure to raise this argument, given that Carnegie's stipulated sentence was well below the maximum potential sentence that Carnegie was facing. As such, the Court denies relief on this claim.

### 3. Failing to Investigate and Review Evidence and Coercing Carnegie into Pleading Guilty

Finally, Carnegie also contends that Roberts was ineffective for failing to investigate the discovery provided by the government and review with him, and for coercing him into pleading guilty. (Civ. No. 20-4315; ECF No. 1, Petition at 6.) In his § 2255 motion, Carnegie claims that his plea counsel John Roberts gave him an "immense" amount of discovery on a USB flash drive. When Carnegie asked Roberts which portions of the discovery pertained to Carnegie, Roberts stated "I don't know." (*See* Petition at 6.) Carnegie also claims that Roberts coerced him into pleading guilty by telling Carnegie that "he could not beat the government at trial," and that Carnegie "was going to lose" and "be sentenced to life in prison." According to Carnegie, Roberts allegedly made these predictions without reviewing the strength of the evidence against him. *See* Petition at 6-7. Roberts also allegedly coached Carnegie regarding what to say in open court. *Id.* at 7. Carnegie also states without elaboration that had he been aware of the "evidence against him,"

he would not have pleaded guilty and notes that he attempted to withdraw his guilty plea prior to sentencing.[4] (*See id.*)

Carnegie's counsel, John Roberts, submitted a certification explaining that he received a voluminous amount of discovery from the government over the course of his representation of Carnegie. (Exhibit C ¶ 7.) Roberts contends that all the discovery that Roberts received was copied and provided to Carnegie. (*Id.*) Roberts also avers, however, that he spent considerable time extensively reviewing the discovery produced by the government and discussed with Carnegie at length how the government's discovery pertained to him personally and the counts of the Superseding Indictment in which Carnegie had been charged. (*Id.*)

Roberts avers that he never represented to Carnegie that he could not beat the government at trial or would lose at trial and be sentenced to life in prison, as Carnegie claims. (Exhibit C ¶ 8.) Rather, Roberts states that he spent a significant amount of time reviewing the government's discovery and discussing the strength of the government's case with Carnegie, as well as the relative strength of a potential defense case. (Exhibit C ¶ 8.) Roberts also avers that he discussed with Carnegie his criminal history and what his exposure could be if he was convicted at trial. (*Id.*) Roberts contends that he did not tell Carnegie he should plead guilty, or that he was going to lose at trial and go to prison for life. (*Id.*) According to Roberts, it was Carnegie who did not want to proceed to trial, and instead wanted to enter into a plea agreement with the Government in order to avoid a potentially lengthier prison sentence. Carnegie also wanted to enter into a plea agreement with the Government in order to avoid additional charges relating to other criminal conduct that was the focus of the Government's then ongoing criminal investigation. (*Id.*)

---

[4] Carnegie also alleges that counsel "abandoned him" at a "critical stage" by failing to review the discovery with him. *See id.*

Roberts also denies that he "coached" Carnegie on what to say during the plea hearing. (Exhibit C ¶ 9.) Roberts contends that he reviewed the Government's proposed factual basis questions with Carnegie, and Carnegie represented to Roberts that he was prepared to admit to the conduct supporting the charges and plead guilty consistent with the parties' plea agreement. (*Id.*)

Here, the Court need not determine whether Carnegie or Roberts are more believable or hold a hearing on this claim because Carnegie's assertions in his § 2255 motion are contradicted and undermined by his own admissions and statements made in other court submissions and under oath in open court during his criminal case.

From the outset, Carnegie submitted a sworn certification, dated August 27, 2018 (August 2017 Certification), in support of his motion to withdraw his guilty plea that contradicts his current claim that Roberts did not review any of the government's discovery with him or explain how it pertained to him. In the motion to withdraw his guilty plea, Carnegie acknowledged that Roberts reviewed the government's discovery with him in detail but complained that Roberts did not sufficiently explain the law of conspiracy or the way in which the rules of evidence would work at trial. *See* 14-220, ECF Nos 817; 817-2; *see also* Def. Br. at 9-13. With respect to discovery, Carnegie specifically averred in the August 2017 Certification that Roberts "went over all the evidence that would show I was a member of the Crips, both physical and audio evidence, including potential testimony from cooperating witnesses." (ECF No. 817-2, Carnegie Declaration at ¶ 9.) In his § 2255 motion, Carnegie now claims that Roberts simply gave him the government's discovery on a flash drive and did not review it with him or tell him which evidence pertained to him. The allegations in his § 2255 motion plainly contradict Carnegie's August 2017 Certification, and the Court declines to credit Carnegie's claim that Roberts failed to review discovery with him or explain how the discovery affected him personally.

17

Carnegie also claims that Roberts told him he could not beat the government and would get a life sentence if he went to trial <u>and did so without reviewing the discovery in the case.</u> For the reasons explained above, however, the Court declines to credit Carnegie's claim that Roberts failed to review the government's discovery with Carnegie, and the remaining allegations, standing alone, do not amount to coercion or otherwise show that Roberts provided ineffective assistance of counsel, as Carnegie's maximum exposure was a life sentence.

Moreover, Carnegie's statements under oath also show that his guilty plea was knowing and voluntary. Habeas petitioners challenging guilty pleas face a heavy burden as statements made under oath carry a strong presumption of verity. *Zillich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994);*see also United States v. Dickler*, 64 F.3d 818, 823 n.7 (3d Cir. 1995) (citing case law recognizing that "[s]worn statements in a plea proceeding are conclusive unless the movant can demonstrate compelling reasons for questioning their truth"). During the June 27, 2017 plea hearing, this Court asked Carnegie: "Are you fully satisfied with the representation and advice given to you by your attorney in this case." Carnegie responded, "yes." (Exhibit A at 5:9-11.) During the plea hearing, Carnegie represented that no one had forced him to plead guilty, and that he was pleading guilty of his own free will. (Exhibit A at 11-12.) Carnegie also confirmed that he understood the elements of the crimes to which he was pleading guilty and then provided factual admissions concerning his personal involvement in specific racketeering acts, including crack-cocaine distribution, heroin distribution, and attempted murder. (Exhibit A at 17-23; *see also* Crim. No. 14-220 (D.N.J. Oct. 4, 2018), ECF 835 (denying Carnegie's Motion to Withdraw His Plea of Guilty).) Here, Carnegie fails to provide any compelling reasons why the Court should disregard his statements under oath, and his conclusory allegations of coercion are insufficient to overcome his sworn statements to the contrary. *See United States v. Stewart*, 977 F.2d 81, 84 (3d Cir. 1992) ("The ritual of the colloquy

is but a means toward determining whether the plea was voluntary and knowing.")."A transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences." *Stewart*, 977 F.2d at 84. After all, "[e]ntry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999).

Finally, Carnegie has not shown that but for the alleged pressure from his counsel to plead guilty, he would have proceeded to trial where he faced a potential life sentence if convicted. Where a petitioner accepted a guilty plea based on deficient representation, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Kmet*, 806 F. App'x. at 112 (quoting *Hill*, 474 U.S. at 59). Carnegie states cryptically that if he had been aware of unspecified "evidence" he would not have pleaded guilty and would have proceeded to trial. The Court, however, has rejected Carnegie's arguments that 1) his conviction under N.J.S.A. 2C:35-5 fails to qualify for the § 851 enhancement and that 2) there was insufficient evidence to support the drug quantity. Carnegie does not otherwise explain why it would have been rational for him to turn down a plea deal that was far less than his maximum exposure. For this reason, he also fails to show prejudice.

### b. *Taylor* Claim

Finally, Carnegie contends that the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), renders him "actually innocent of Count #14 of [the] indictment" for Conspiracy to Use, Carry, or Possess a Firearm in Furtherance of a Crime of Violence, because "possession of a firearm as typically charged under 18 U.S.C. § 924(c) with its predicate conduct or offense being a conspiracy or attempt crime is not a crime of violence." ECF No. 1046, at 1.

The government contends that there are three problems with this claim: (1) it is untimely; (2) adjudicating it would have no effect on Carnegie's sentence; and (3) Carnegie is not actually innocent of Count Fourteen.

Here, even if Carnegie were correct that *Taylor* renders him actually innocent of Count Fourteen (which is by no means clear), an order from this Court so holding would have no impact on Carnegie's sentence, and the Court need not reach or decide this issue under the "concurrent sentencing doctrine." It is well established that under that doctrine, courts can "avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent." *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997); *accord Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986) (when "the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility.").

The Court exercises its discretion to avoid deciding whether Carnegie's claim under *Taylor* is timely and, if so, whether *Taylor* renders him actually innocent of Count Fourteen under the concurrent sentence doctrine. Here, the Court sentenced Carnegie to "a term of 300 months on each of Counts 1, 18, and 20; a term of 36 months on Count 13; and a term of 240 months on Count 14, all terms to be served concurrently." (ECF No. 855 (Judgment in a Criminal Case), at 1.) In other words, even if Carnegie were "actually innocent" of Count 14 (something this Court need not decide), his 300-month sentence on Counts 1, 18, and 20 would remain in full effect, meaning that vacating his concurrent 240-month sentence on Count 14 would be pointless. *See Duka v. United States*, 27 F.4th 189, 195 (3d Cir. 2022) (holding that Judge Kugler properly exercised his discretion when he declined to decide whether§ 924(c) counts were invalid after Davis where defendants were serving life sentences on other counts that were unaffected by the § 924(c) error they raised), *cert. denied*, 2023 WL 350032 (U.S. Jan. 23, 2023).

20

Moreover, the Court doubts that Carnegie can show actual innocence. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623 (1998). In cases where the Government has forgone more serious, or at least equally serious, charges during plea bargaining, the movant's showing of actual innocence "must also extend to those charges." *See id.* at 624 (considering whether there was evidence that the government forewent an equally-serious charge such that the defendant would have to show actual innocence of that charge); *see also United States v. Caso*, 723 F.3d 215, 220-221 (D.C. Cir. 2013) (noting that the *Bousley* Court's analysis suggests "it intended the actual innocence requirement to extend to equally serious charges" and the Court's likely rationale also "supports requiring petitioners to show their innocence of equally serious charges"); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) ("The logic of the *Bousley* opinion does not require that the charge that was dropped or foregone ... be more serious than the charge to which the petitioner pleaded guilty. It is enough that it is as serious.").

In addition, "[i]t is well settled that, '[i]n a prosecution under [§ 924(c)], the Government must prove that the defendant committed a qualifying predicate offense ... but it is not necessary that the defendant be separately charged with or convicted of such an offense.'" *United States v. Collazo*, 856 F. App'x 380, 383 (3d Cir. 2021) (quoting *United States v. Lake*, 150 F.3d 269, 274-75 (3d Cir. 1998)) (alterations and omission in original). Indeed, a conviction under § 924(c) only requires "legally sufficient proof that the predicate crime of violence ... was committed." *Johnson v. United States*, 779 F.3d 125, 130 (2d Cir. 2015). Courts looks to "the actual proffer, plea hearing, and other evidence in the record to determine if a qualifying predicate offense was committed." *Collazo*, 856 F. App'x. at 383.

Here, there is substantial proof that Carnegie committed a qualifying crime of violence, namely, purposely assaulting another with a firearm "in furtherance of, and facilitated by, the New Jersey set of the Grape Street Crips, an enterprise, as defined in Title 18 United States Code, Section 1961(4)." (*See* ECF No. 321 (U.S. Plea Agreement with Justin Carnegie), at 10.) Carnegie admitted during his plea hearing in this Court that he was a member of an enterprise engaged in racketeering activity, and that in order to maintain and increase his position in the enterprise, he participated in the purposeful assault of another with a firearm. (*See* ECF No. 822-1, at 19-22; *see also* ECF No. 321, at 10 ("This Office and Carnegie agree to stipulate to the following facts: ... On or about October 7, 2013, Carnegie and others participated in the attempted shooting of rival gang-members in retaliation for the then recent-murder of a fellow-gang-member.").) Carnegie's admissions satisfy all the elements of a predicate crime of violence for 18 U.S.C. § 924(c)(3)(A), namely, assault with a dangerous weapon in aid of racketeering, contrary to N.J.S.A. 2C:12-l(b)(2). *United States v. Abdullah*, 905 F.3d 739, 749 (3d Cir. 2018) (holding "that a conviction for third-degree aggravated assault with a deadly weapon under New Jersey law, § 2C:12-l(b)(2), is categorically a crime of violence"). Put simply, although the § 924(0) offense was predicated on a Violent Crimes in Aid of Racketeering conspiracy to commit aggravated assault, that conspiracy achieved its object when Carnegie and others attempted to shoot a rival with a firearm.

For these reasons, the Court denies relief on Petitioner's *Taylor* claim.

## IV.   **CONCLUSION**

For the reasons explained in this Opinion, the Court denies the Motion, denies the request for an evidentiary hearing, and denies a certificate of appealability, as reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability

22

is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.

Madeline Cox Arleo, District Judge
United States District Court

DATED: May 30, 2023.

23